Thank you, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana, and I represent Ms. Roxanne Gone. This case presents one issue, one issue only, and that's whether or not the sentence that was imposed upon Ms. Gone is reasonable in light of all of the factors set forth in 18 United States Code, section 3553A. Ms. Gone, of course, maintains that it was not a reasonable sentence, that it was greater than necessary to achieve the goals and the factors set forth in section 3553. Counsel, the government seems to think we have no jurisdiction because the sentence was within the guidelines range. Do you have any comment on that? I do. If you notice, the case that the government relies on, the Ninth Circuit case, dates back to 1990. And the First Circuit case that they rely on as well appears to, they, both of them, both cases involve departures, which this case doesn't involve on its face. It has nothing to do with departures. And that was the way the jurisdictional issue was analyzed. And it appears from my reading from the First Circuit case that they were analyzing the issue of whether or not they could review the court's refusal to depart under the old law, because that was the way it appeared to have been presented in that case. Of course, now what we're looking at under the Booker decision and in light of the changes brought by that decision is whether, in fact, any sentence is reasonable. And the guidelines are one aspect that the court should use in determining whether or not the case was reasonable, but it doesn't affect jurisdiction any longer. Did I also read correctly that you're making a legal challenge under 3553, in other words, that there was an improper weighing of statutory factors, which would be a legal error which we would have jurisdiction to review? Yes. Yes. Essentially that the court placed, effectively ignored a number of the factors that are set forth under Section 3553 and placed undue emphasis on the one aspect, that is, his consideration of the seriousness of the crime. At any rate, as my briefs, I think, set forth fairly adequately, given me the nature and circumstances of this offense, which even the government acknowledges is minor in a number of respects. And given the fact that Ms. Gahn has no criminal history to speak of, she has, despite a number of difficulties in her life, I think performed remarkably. There was no indication that she's a threat to the public. And, in fact, all indications indicate otherwise. That a sentence at the very high end of the guideline range, a sentence under the old law that would have been the highest permissibly, that could have been permissibly applied, was unreasonable in this case. It wasn't necessary to achieve the goals and objectives of Federal sentencing and, therefore, the district court erred. So has she served approximately four months of the six months? I think it's four and a half months. And this Court, you know, I had filed a number of motions asking to have her released pending appeal, and those were not. She was in September released? And then she was released in October. October. Right. So she has about six weeks left to serve on her six-month sentence. And you don't have to tell me the outcome of this, but were there any discussions between you and the government following the Ninth Circuit order for her release? There was. I think we were both surprised, because the motion to have her released had been earlier denied, and then the way the order was worded, the order indicated that she could be released if she wanted to be released. And I was trying to talk to her, you know, about that, and they essentially kicked her out of the prison before I could do that. But, yes, there was some consideration between the government and I. I don't think they've been. Do you want to reserve your remaining time? Yes, I would. Let me ask this. The only testimony of a professional in mental health said that this would be devastating to her and that she was possibly suicidal. Was there any testimony other than that as to what would happen to her in prison? No, there wasn't. The only evidence that I'm aware of, as I think back, the only evidence were the letters and affidavits from her psychiatrist that treated her for about ten years for bipolar illness. Thank you. May it please the Court. I'm Curt Alme, Assistant United States Attorney from Montana, and I represent the United States. I'm new coming onto this case, not having filed the briefs, but I did file the Rule 28J letter earlier this week that I understand from your question has gotten to you. What I would like to address is four different issues. I'd like to quickly discuss jurisdiction, and then I'd like to discuss the presumption of reasonableness, as well as why this sentence was reasonable, and finally address the mental health issue to address your question, Judge Fletcher. There's no dispute in this case that the guideline range was properly calculated. There's also no dispute in this case that the sentence was imposed within that guideline range. For that reason, the government argues that there's no jurisdiction in the case. We cite in support of that the case cited in our 27J letter, that is U.S. v. Melendez-Torres. Counsel, you cite some other cases where other circuits have said that there's a presumption of correctness or reasonableness if it's within the guidelines. That would suggest that those circuits think we have jurisdiction. That's correct, Your Honor. In fact, the Seventh Circuit explicitly dealt with that issue in the case cited in the 28J letter. As far as I'm aware, only the First Circuit has come to the conclusion that there's no jurisdiction. But I think the basis for that is worth reciting to the Court, and that is that Booker did not alter the appeal provision of 3742A. It left it intact. In fact, the relevant portion of the Booker opinion states that the Act continues to provide for appeals from sentencing decisions, and then cited 3742A and 3742B. Okay. I think I agree with that view of Booker, which not all the circuits have articulated. But that seemed to me to beg the question in this case, which had to do really with the challenge to the weighing of the statutory factors. So if there's a legal challenge under those, however one might read Booker's intersection with the various statutory provisions, wouldn't we still have jurisdiction? I think if we go to 3742A, I think there's the provision that says there is jurisdiction for a violation of law, sentence imposed in violation of law. So I think a fair question arises as to whether or not now, since Booker, this does raise a violation of law. We would argue, however, that that does not apply, and the reason is because Booker did not specifically say so and, in fact, specifically left 3742A intact. And if you're a counsel vacated the idea that the sentences were mandatory, the sentencing guidelines were mandatory. They're now advisory. So how can we say we don't have any jurisdiction to determine reasonableness, which seems to be the standard of Booker? And that's the conflict, I believe, that was raised by the Seventh Circuit, Your Honor. And I do acknowledge that, that it is – it does seem to be contradictory with the Booker decision, which says that the guidelines aren't mandatory. However, I think we have to – and the government would certainly argue that we need to take a look at the Booker opinion itself, and the Supreme Court certainly did not go to 3742A and clearly – and state that the jurisdictional provisions had changed. And in light of that direction, we would argue that 3742A remains as it did pre-Booker. And, of course, in Garcia-Garcia, this Court had previously held that there would be no – That was, of course, a pre-Booker. Pre-Booker, that's right. I understand that the effect of this appeal, if it's lost, is that she serves another month and a half? Incarceration, that's correct, Your Honor. And nothing else? She's already paid the money? She's paid her restitution, that's correct. She on probation for any – for supervision? Your Honor, I would have to check the record to get back to you if a term of supervised release was imposed. There are as – But she has one year of supervised release. One year of supervised release. So basically, if it were determined to be unreasonable or without appropriate consideration of the factors, she would be released, all the money would be paid, and she'd still be on supervision for a year. Is that correct? I think it depends on whether or not the Court remands this for sentencing, for resentencing by the district court. If so, then the district court would go through the sentencing process again. So I think it depends on the remedy that would be used. If our remedy were to determine that the sentence served would be reasonable but any further sentence would be unreasonable, then she would remain out of custody. Would that be the practical effect? That's what I understand the effect would be. But she would still have a one-year supervised release term if that were left intact. That's my understanding, Your Honor. She's on that now. Excuse me? She's on supervised release right now. She's been released, so, right, her term of supervised release would apply. It seems that the government's a little pig-headed to want to send her back for a month and a half. Well, Your Honor, we certainly don't mean to be vindictive or we don't mean to be stubborn about a sentence, but we did think that the sentence was imposed reasonably, and there are the principles of law here that we thought were important, including the jurisdictional issue as well as the presumption of reasonableness. Again, we do have a sentence here that was within the guidelines range. I don't recall, but what was the government's recommendation? At sentencing initially? We stood silent, deferred to the discretion of the district court. So this isn't a case where the government came in and said, you know, hit the top of the guideline range, this is a lady that, you know, deserves that kind of a sentence? It's not, Your Honor. Again, we took no position at sentencing. Okay. Thank you. I did want to address in some of the time I have left the key issue that was raised by the defendant, and that is the mental illness issue. And this was raised in questioning of defense counsel here today. In the defendant's brief, she raised two issues relative to her mental illness that suggested that this would not be a reasonable sentence. The first one was that her bipolar disorder requires constant treatment and monitoring, and second, her psychiatrist stated that incarceration could exacerbate her condition in a very dangerous situation. I'd like to address each of those if I could. First of all, I think the record demonstrates that the defendant does not need constant treatment and monitoring. In the record, the defendant testified at the motion for release pending appeal that she had not seen her physician for six months. She also testified that she had not seen her counselor for six months. Now, even if she did require constant monitoring and treatment, I think that the point made by the district judge at sentencing that the U.S. prison facilities are staffed with people capable of addressing these type of medical problems would probably apply here. There was also testimony that her daughters checked up on her almost every day by phone. That's right, Your Honor. I believe her daughters reside in Billings. And she resides, I believe, on the Fort Belknap Reservation. But she did make several trips to Billings. I know that's the nature of the charge against her was using her credit card for those trips. I did want to address, though, the statement by her psychiatrist that said that this could result in a very dangerous situation. I think it's important to note the psychiatrist said could. She didn't say it would. She didn't even say it was likely. She said it could. And I think that's an important distinction. If the court were to basically not impose a prison sentence on anyone for whom prison could result in a dangerous situation, I think that would have fairly broad impact. It would have impact not only in the mental illness arena. It could have impact on informants who could be put in a dangerous situation by being put in a prison population, as well as child molesters and other types of specific offenders who may be in a more dangerous situation in prison. She also said that she was suicidal. I believe that was the dangerous situation she was residing to, is that she had suicidal ideation. In any case, though, she didn't say that she was, she would be suicidal, or it was very likely she would be suicidal. She simply said that it could result in a dangerous situation. And, again, given that, those probabilities then, the district court acted reasonably in weighing that determination and deciding that incarceration would be appropriate. You would never expect the counselor to make it an absolute that she would commit suicide. You wouldn't expect that, would you? I wouldn't, Your Honor. But I might expect her to say that it was likely or probable, more likely than not, as opposed to could. But I don't think that's the equivalent of saying it was dangerous. Maybe that's the equivalent. I'm sorry, I didn't hear you. That saying that the situation was dangerous might be the equivalent of saying it was likely. Well, I think that was more the result of what, not the probability that it would happen. I think when I read the letter, at least, Your Honor, it seemed to me that that would be the result if it came about. But that she wasn't discussing the probability by saying that. In any case, Your Honors, I think that the record shows that for deterrence purposes, for the need to be sure that this offendant doesn't reoffend by being sure that others understand the gravity of what she did, and maybe most importantly, the nature and characteristics of this offense, which include an abuse of trust, which include a crime that was committed over an extended period of time, not just one abuse of trust, but an abuse of trust that occurred over 30 months, as well as her motive here. It wasn't just greed, as has been cited in the briefs, but it was revenge. Thank you. A couple of points I think that need to be made. Judge King, you brought up the issue of whether or not there was any money owing. In fact, full restitution had been made by time of sentencing. And that's one of the factors that the Court needs to take into consideration in determining a sentence that should be imposed. It was paid at the time of sentencing, and therefore, there was no need for further incarceration in order to ensure that the restitution would be paid. Second, with respect to her mental illness, the doctor in her letter, I think, put it in the strongest terms that she could. It's generally consistent with professional practice. She stated that in her opinion, incarceration could be disastrous to her mental health and physical well-being. And I don't think that any physician would ever state an opinion in stronger terms than that. She knew Roxanne Gahn for well over 10 years, had been treating her. There was no argument about whether or not Ms. Gahn was being treated on medications to ensure that the symptoms of her bipolar illness would not return. The testimony was from her daughter, I believe, that her daughter checked in on her at least once a day to make sure that Ms. Gahn was not deteriorating with respect to her mental health. The factors in this case, one of which, of course, is the sentencing guidelines, were not adequately reviewed. Not adequately implemented by the court in imposing sentence here. The sentence was within the guideline range, but also within the guideline range was a sentence of probation or a sentence of community confinement. All of those fell within the guideline range. And given the fact that this crime occurred, we have to remember five years prior to sentencing, five years prior to indictment, and there was no indication that Ms. Gahn had been in any trouble since that time. And, in fact, had any trouble in her 55, 56 years on earth, with the exception of a misdemeanor from Texas back 30 years ago. There was no need to impose the harshest term available under the sentencing guidelines to protect the public. There was no need for the sentence to provide her with rehabilitation. In fact, the evidence indicated contrary, that a term of incarceration would be a detriment to her rehabilitation. The district court quite simply imposed an unreasonable sentence, and I would ask that this court reverse the sentence, find it unreasonable that the court in its remand order the district court to impose a sentence no higher than time served. Thank you. Thank you. Thank both counsel for your arguments this morning. The United States v. Gahn is submitted.
judges: B. Fletcher, McKeown, King